In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2902

NALCO COMPANY,

*Plaintiff-Counterdefendant-Appellee,*

*v.*

DAVID T. CHEN,

*Defendant-Counterplaintiff-Appellant,*

*v.*

NALCO MOBOTEC, INC.,

*Counterdefendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 9931 — **Harry D. Leinenweber**, *Judge.*

ARGUED DECEMBER 5, 2016 — DECIDED DECEMBER 9, 2016

Before EASTERBROOK and ROVNER, *Circuit Judges*, and
SHADID, *District Judge.*[*]

---

[*] Of the Central District of Illinois, sitting by designation.

EASTERBROOK, *Circuit Judge*. Nalco and David Chen conducted a joint venture to sell environmental equipment in China. Nalco owned 55% of the venture, Chen 40%, and a third party 5%. When the joint venture (Nalco Mobotec Environmental Protection Technology (Shanghai) Co., or NMEPT) encountered business problems, Nalco guaranteed a loan, which NMEPT was unable to cover. Nalco paid the creditor and sued Chen (under the diversity jurisdiction) for his 40% share of the outlay. The district court entered judgment in Nalco's favor for more than $2 million. 2014 U.S. Dist. LEXIS 76207 (N.D. Ill. June 4, 2014).

Chen filed counterclaims against both Nalco and a subsidiary, Nalco Mobotec, Inc. (NMI), through which Nalco had made its investment in the joint venture. Chen contended that NMI had violated his rights under the agreement by causing the joint venture to borrow $300,000 without his approval, even though the agreement required all investors' consent for borrowing money. When the joint venture did not repay this loan, the creditor petitioned it into bankruptcy under Chinese law—another violation of the agreement, Chen maintained. As Chen described things, the lender was doing Nalco's bidding in an effort to get around a clause of the agreement requiring the three investors' unanimous consent for bankruptcy proceedings. Nalco wanted to wind up the unprofitable venture, but Chen preferred to keep it alive (if dormant) in order to protect its intellectual property. Chen's counterclaim included 12 counts under the laws of both China and Illinois. The district court granted summary judgment against Chen on 11 of the 12, see 2015 U.S. Dist. LEXIS 68095 (N.D. Ill. 2015), and he soon abandoned the twelfth. At this point the suit was over, but no one appealed.

Chen is not reconciled to his loss, however, and filed a new suit, this time in China. He named as the defendant Mobotec LLC (Mobotec). Contending that Chen was attempting to relitigate claims already resolved in this nation, Nalco asked the district court to enjoin him from pursuing the Chinese litigation. The court issued an anti-suit injunction, 2016 U.S. Dist. LEXIS 75698 (N.D. Ill. June 10, 2016), and this time Chen appealed.

His principal argument is that Mobotec was not a party to the Illinois litigation and therefore cannot benefit from the Illinois judgment. That would be a questionable proposition even if Mobotec were a distinct entity, for federal courts no longer require mutuality in civil litigation. See *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313 (1971). Having raised and lost his claims under the joint venture agreement, Chen is hard pressed to explain why he is entitled to another round of litigation. But then one might ask what skin it is off Nalco's nose whether Chen seeks and gets relief against Mobotec; why would Nalco or NMI even have standing to protest?

Their answer, seconded by the district court, is that NMI and Mobotec are the same entity. Relying on documents from Delaware's Secretary of State, the district judge found that Nalco Mobotec, Inc., first changed its organizational form from a corporation to a limited liability company, becoming Nalco Mobotec LLC, and then changed its name to Mobotec LLC as part of the sale of this business to Power Industrial in July 2013. Nalco retained a contractual right to act for Mobotec in connection with the dispute about the joint venture with Chen, and doubtless a duty to indemnify

Power Industrial for any loss, which explains why this litigation proceeded as it did. The district court wrote that, because NMI and Mobotec are just different names for the same thing, Chen cannot avoid the consequences of his loss by changing the entity's name on legal papers in China.

Chen protests that he was surprised by the district judge's conclusion. Nalco had filed a lawyer's declaration analyzing whether the Chinese claims overlapped those in Illinois, and the Delaware documents were attached to this declaration. Chen maintains that, when the district court struck this declaration on the ground that the lawyer had not demonstrated expertise in Chinese law, the judge disabled himself from relying on the attachments and made it unnecessary for Chen to discuss their significance. When the attachments played a role in the district court's decision, Chen declares, he was bushwhacked.

There are two problems with this line of argument. One is that the judge was free to get the documents from Delaware and to take judicial notice of them, whether or not they had been tossed out along with the declaration to which they were attached. The other is that there would be no point in remanding for further proceedings because, in the months since the district court acted, Chen has not offered any reason to doubt the judge's understanding of the corporate documents. Chen's appellate brief does not contend that the judge was *wrong* in finding that NMI and Mobotec are different names for the same thing, though he has had plenty of time to find any flaws in the judge's reasoning or its documentary foundation. To the contrary, Chen's suit in China seeks to hold Mobotec liable for NMI's acts relating to the

joint venture. What could be the basis for that approach, unless the two names denote one continuing business entity?

Still, Chen insists, Nalco is estopped to deny that Mobotec is a different entity. That's because during discovery Nalco said that it could not produce certain documents held by Mobotec. Having taken that stance and won (at least, won an order concerning discovery) Nalco cannot reverse course, the argument goes. We need not consider how far judicial estoppel, as opposed to law of the case, governs proceedings within a single lawsuit. Cf. *New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001); *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1547–48 (7th Cir. 1990). For Chen has lifted Nalco's statement out of context. Recall that NMI was sold to Power Industrial in 2013. Nalco told the district court that it could not get the documents— not because Mobotec was a different entity but because it had a new owner, and Nalco could not rummage through its files at will. Nalco was inviting Chen to serve a third-party discovery request, which he elected not to do. Nalco was not representing that NMI and Mobotec are different businesses. Civil litigants are entitled to take inconsistent positions within a single suit, see Fed. R. Civ. P. 8(d)(3), but Nalco has not been inconsistent in this one.

Chen has a second line of argument against the district court's injunction. One might have expected Chen to invoke principles of international comity and contend that the Chinese court, applying Chinese law, is the right body to ascertain whether Chen is attempting inappropriate litigation. For all we know, China may not use the law of claim or issue preclusion at all (these are common-law concepts, and China is not a common-law nation) and may rely on awards of at-

torneys' fees or some other device to discourage losers from continuing their battles. Or China may see more difference between Chen's claims there and his claims here than a federal judge in this nation perceives.

But comity is not Chen's theme. His lawyer told us at oral argument that it had been considered but deliberately omitted from the appellate brief. Instead he relies entirely on a doctrine of American law: The difference between permissive and compulsory counterclaims. The sort of claims advanced in China, Chen asserts, would have been permissive counterclaims under Fed. R. Civ. P. 13(b). And since he was free to omit them from Nalco's suit, he is equally free to assert them in China.

This would be a powerful argument if Chen had done nothing but defend against Nalco's claim for his share of the guaranty. But that's not what he did. He added NMI as a third-party defendant and asserted 12 counterclaims against both Nalco and NMI. Having elected to take the offensive, Chen was obliged to raise all claims that stem from the same transaction or series of related transactions (what courts sometimes call the "core of operative facts"). See *Restatement (Second) of Judgments* §24 (1982) (rule against claim splitting). Chen did not try to raise US counterclaims in the US and Chinese counterclaims in China, a strategy that our nation's rules of preclusion allow if the reservation is expressed to and accepted by the original court. See *Restatement* §26(1)(b). Instead his 12 counterclaims included several resting on Chinese law. Under ordinary rules of claim preclusion, exemplified by *Restatement* §24, the claims now pending in China arise from the same set of related transactions as his 12 counterclaims and therefore *had* to be litigated together

with them. As *Restatement* §25 puts it, "The rule of §24 applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." This is known as the doctrine of merger and bar. See also *Restatement* §19.

Chen does not contest this understanding of preclusion or dispute the way the district judge applied it. He rests his appeal on the distinction between permissive and compulsory counterclaims, a distinction of no moment given his decision to add NMI as a party and present 12 counterclaims in Nalco's debt-collection suit. See *Restatement* §23 ("Where the defendant interposes a claim as a counterclaim and a valid and final judgment is rendered against him on the counterclaim, the rules of bar are applicable to the judgment."). The permissive/compulsory distinction is a real one, but it is a red herring for current purposes.

AFFIRMED