PER CURIAM.
¶ 1 Karen Rosneck appeals a circuit court order affirming a decision of the Wisconsin Employment Relations Commission (WERC) determining that her job is properly classified as a paraprofessional "Library Services Assistant-Advanced," rather than as a professional "Librarian." Because substantial evidence supports WERC's decision, we affirm.
BACKGROUND
¶ 2 Rosneck is employed by the University of Wisconsin in a position which has been classified under the state civil service system as a Library Services Assistant-Advanced (assistant-advanced). The general description of a library services assistant indicates that it provides "support to professional librarians and other library staff by assisting with or coordinating library activities such as acquisitions, archives, cataloging, circulation, collection development, preservation/conservation, interlibrary loan, and reference with information recorded on paper ... or other media." There are multiple types of assistants within the library services assistant series; Rosneck's "advanced" classification is the highest. According to the same general description, the assistant-advanced performs "the most complex library services program support work," requiring "extensive knowledge and experience in library practices and procedures," and comes with higher degrees "of responsibility, accountability and independent judgment in making decisions to resolve highly complicated problems in their functional area(s), or area(s) of specialization." Assistant-advanced positions "may for less than a majority of time, be responsible for the performance of tasks identified as professional librarian functions." Examples of assistant-advanced work include providing acquisition services, such as screening and sorting orders from selectors, selecting vendors and creating purchase orders, and checking titles against invoices to resolve any discrepancies. Duties also include "[u]tiliz[ing] specialized expertise (e.g. East Asian [or] Slavic ... language fluency ...) for a majority of the time to perform library services responsibilities and serve as a resource to others in the area of expertise."
¶ 3 Rosneck unsuccessfully sought to have her position reallocated or reclassified to the professional librarian classification, and appealed the adverse decisions to WERC.[1] At the start of the WERC hearing, the administrative law judge explained to Rosneck that, in order to prevail, she needed to show that a majority, or fifty-one percent, of the duties she performed fell into the librarian classification. Rosneck's written position description and the written specifications for both the library assistant classification series and the librarian classification were introduced into evidence.
¶ 4 Rosneck's central argument at the hearing was that her expertise in Slavic languages and the Cyrillic alphabet qualified her as a professional librarian. The librarian classification is, according to the applicable description of the position, "responsible for performing a full range of professional librarian duties in one or more library functions such as reference, cataloging, circulation, acquisitions, bibliographic instruction, and collection development." "Positions in this classification meet the definition of professional as defined in s. 111.81(15), Wis. Stats.," but do not include positions "which, for a majority time (i.e., more than 50%), provide support to professional librarians ... and are more appropriately classified as Library Services Assistants." Librarians may be "responsible for the development and management of specialized collections" and "may involve responsibility for a library budget, [and] the administration of library functions and programs."
¶ 5 Department of Administration specialist Peter Flood testified about the classification process. He testified that the librarian classification's reference to the "full range of professional librarian duties" referred to professional duties that "require a large amount of discretion," as opposed to "paraprofessional" positions that may have some overlapping duties which make up less than fifty percent of the overall work and vest the employee with "less discretion." For example, he explained that a librarian would exercise wide discretion in selecting or determining which materials to acquire while the assistant-advanced would support the acquisition process. Flood testified that he audited and analyzed Rosneck's position and also interviewed her to confirm which duties she actually performed. He testified that Rosneck's position did not allocate a majority of its time to duties specified in the librarian classification, explaining that her core job was "to follow established procedure," as opposed to setting procedure.
¶ 6 WERC found that the majority of Rosneck's duties were not those described in the "librarian" classification, and that her position better fit the "assistant-advanced" classification. WERC also found that in performing "tasks associated with the acquisition of materials," Rosneck did not exercise the discretion of a librarian. WERC found that she had "discretion to determine what physical copy of a work to obtain and from what vendor" based on "established procedures," but did not "decide what works to acquire or manage a budget associated with the acquisition." Rosneck also lacked the requisite "broad authority for the supervision of employees" or "the management of special collections." In addressing Rosneck's focus on "her expertise in Cyrillic alphabet languages," WERC explained that the librarian classification contained no professional language skills requirement. WERC dismissed Rosneck's challenges, determining that she failed to meet her burden to demonstrate "that the majority of her position's duties 'best fit' the Librarian classification."[2] Rosneck sought judicial review, and the circuit court affirmed. The circuit court concluded that "[t]he bottom line here is that the substantial evidence in the record supports the WERC's conclusions that Ms. Rosneck ... [did] not perform the full range of professional librarian duties a majority of the time," including, for example, that she was not "responsible for supervision of subordinate employees" and lacked the "independent decision-making responsibility" exercised by Librarians. Rosneck appeals and maintains that WERC erred in dismissing her reclassification challenge.
DISCUSSION
¶ 7 State civil service positions are classified based on the duties and responsibilities of that position as compared to the available classification categories. See WIS. STAT. § 230.09(1) (2015-16).[3] On appeal, this court reviews the decision of the agency, not that of the circuit court. Richland Sch. Dist. v. DILHR , 174 Wis. 2d 878, 890, 498 N.W.2d 826 (1993). An agency's findings of fact will not be overturned as long as those are supported by substantial evidence. Hutson v. Wisconsin Pers. Comm'n , 2003 WI 97, ¶ 29, 263 Wis. 2d 612, 665 N.W.2d 212. The substantial evidence test is "not whether a preponderance of the evidence supports the WERC's determination, but whether reasonable minds could arrive at the same conclusion reached by the WERC." Madison Teachers, Inc. v. WERC , 218 Wis. 2d 75, 85, 580 N.W.2d 375 (Ct. App. 1998). Moreover, when reviewing the record, we look for evidence that supports WERC's determination, not for evidence to support a contrary finding the agency could have made but did not. Id. at 85-86. We cannot substitute our judgment for that of the agency as to the weight or credibility of the evidence. See WIS. STAT. § 227.57(6) ; Princess House, Inc., v. DILHR , 111 Wis. 2d 46, 54-55, 330 N.W.2d 169 (1983).
¶ 8 We conclude that substantial evidence in the record supports WERC's findings about the duties Rosneck performed and how those duties compared to the classification specifications. According to the written description, Rosneck's position is designed to spend fifty percent of the time dealing with inventory and making payments for orders by "[c]heck[ing] titles against the vendor's invoice," "[c]reat[ing] purchase orders for shipments" and invoices, and "[f]orward[ing] received materials." Another twenty-five percent of the time is spent "[c]reating purchase orders" for "assigned requests for materials," "[s]elect[ing] vendors" for them, and then placing the order. The remaining twenty-five percent is devoted to problem solving related to those orders and receipts and miscellaneous duties related to training, meetings, and keeping abreast of new policies. Of that time, "at least 50% ... will be devoted specifically to activities related to Slavic-language acquisitions." Rosneck agreed that she spent most of her time during an average work week performing the duties set forth in her position description. She testified that she did not have discretion over which texts to purchase; she had discretion to select from which vendors to purchase the items.
¶ 9 These position duties fall within the assistant-advanced classification and do not fit the librarian classification. An assistant provides "support ... by assisting with or coordinating ... acquisitions," and does not spend a majority of the time on "development and management of library functions." Notably, the assistant-advanced classification uses "specialized expertise (e.g., ... Slavic ... culture and language fluency ...) for a majority of the time" and provides "acquisition services." In contrast, there is no foreign language expertise specified in the librarian classification. Library services assistant-advanced is the right classification for Rosneck's duties based on the "factors recognized in the job evaluation process." See WIS. STAT. § 230.09(1), (2)(a).
¶ 10 The credited hearing testimony further supports WERC's findings. Flood testified that Rosneck's position did not allocate a majority of its time to duties listed in the librarian classification. Rather, Rosneck's position fit the classification of assistant-advanced. Specifically, 76% of her duties fit the assistant-advanced classification, a determination that Flood described in detail, explaining, for example, that Rosneck's core job was "to follow established procedure[s]," as opposed to setting those procedures. Flood further testified that Rosneck's work was comparable to others in the same position and that her use of Slavic expertise fit squarely in the assistant-advanced classification. Her duties were not comparable to those in the librarian position who, for example, engaged in "original cataloging" and not simply "acquisition services ... [for] other members of the library."
¶ 11 Similarly, Nancy Graff Schultz,[4] a UW library administrator involved in the classification process, testified that Rosneck spent a majority of her time in paraprofessional work consistent with the assistant-advanced classification. Schultz explained that Rosneck's position did not exercise the "independent decisionmaking" of a librarian by, for example, choosing which funds to use for which books, taking ultimate responsibility for budget decisions, or engaging in more supervisory duties. Instead, her duties were "within a specific set of guidelines" consistent with a paraprofessional, similar to others with the same classification.[5]
¶ 12 As she argued to WERC, Rosneck maintains in this appeal that her foreign language expertise dictates her classification as a professional librarian.[6] Here, Rosneck points to that portion of the librarian specification which states that "[p]ositions in this classification meet the definition of professional as defined in s. 111.81(15), Wis. Stats." There no longer exists a WIS. STAT. § 111.81(15) but, at the time, it stated in part: "Professional employee" means "[a]ny employee in the classified service who is engaged in work" "[p]redominantly intellectual and varied in character as opposed to routine," or "[i]nvolving the consistent exercise of discretion and judgment in its performance." WIS. STAT. § 111.81(15)(a)-(a)2. (2011-12). Leaving aside whether Rosneck fits this broad definition, her reliance is misplaced. To the extent Rosneck's language expertise might be considered a professional skill, it is not a skill that requires her to be classified as a librarian. Being a professional is a necessary but insufficient condition to classification as a librarian; excluded from the librarian classification are positions "which, for a majority of time (i.e., more than 50%), provide support to professional librarians ... and are more appropriately classified as Library Services Assistants." Rosneck uses her expertise in foreign languages to facilitate the acquisition of materials selected by others and in support of professional librarians. Rosneck's specialized knowledge helps her "search authors and titles," and "put in order records, so [she] can pay invoices" to facilitate acquisitions. These are quintessential assistant-advanced duties.
¶ 13 Rosneck also argues that she should be classified as a librarian because she was delegated some Slavic language-related duties from former librarian Milan Radovich. We are not persuaded. First, the credited testimony was that the duties delegated from Radovich to Rosneck were not the core librarian duties but, rather, paraprofessional duties; the librarian duties went to another employee. Second, to the extent some of Radovich's delegated duties might have been those of a librarian, Rosneck's assistant-advanced classification contemplates that she will perform some librarian duties, just not for a majority of the time. Regardless of which duties went from Radovich to Rosneck, the balance of the evidence supports WERC's finding that Rosneck does not in fact perform the duties of a librarian a majority of the time.
¶ 14 Finally, Rosneck contends that the administrative decisions should have been based on a January 1996 version of the assistant-advanced classification instead of the May 2011 description. Rosneck's arguments are difficult to discern and, in any event, we are not persuaded. In addition to other flaws in her convoluted argument, Rosneck fails to explain why use of the 1996 classification specification would have led to a different result. The 1996 version pertains to "support paraprofessional positions" in the library system and their performance of acquisition work and some "professional library functions for ... less than a majority[ ] of time." Like the 2011 version, this describes Rosneck's duties. WERC found that Rosneck did not fit the librarian classification regardless of which version of the assistant-advanced classification is used. Like the circuit court, we have determined that WERC's findings are supported by substantial evidence.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

Rosneck challenged (1) a May 22, 2011 "reallocation" decision by the Department of Administration, which was based on a more general survey that included Rosneck's position, and (2) an August 2011 decision by the University of Wisconsin denying Rosneck's subsequent request to be reclassified. Both decisions address the same core question, the proper classification of Rosneck's position. Due to their overlapping nature, Rosneck's administrative challenges were consolidated in front of WERC, and WERC issued two decisions in response to Rosneck's two administrative challenges. The decisions were based on the same hearing and their contents are essentially identical. For all intents and purposes, we discuss the two decisions together as a single decision.

"Best fit" is a term used by classifying agencies to describe when someone spends 50% or more of the time doing a particular classification's duties-if so, that classification is the "best fit," and applies to the position at issue. This "best fit" concept is built into the instant classifications. For example, the Library Services Assistant classification does not apply when a position performs Librarian duties "a majority" of the time, and vice versa.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The respondent's brief erroneously refers to the cited witness by the name of Sandra Guthrie. Rosneck's reply brief suggests that Sandra Guthrie never even participated in the administrative hearing. Rosneck is incorrect. The record shows that Guthrie testified after witness Flood and before witness Schultz.

William Byrne, a librarian in the acquisitions department, also testified that, as opposed to those classified as assistant-advanced, librarians were either supervisors or they oversaw specific areas.

In general, Rosneck's appellate arguments are difficult to follow, contain spotty citations to the appendix and lack any citation to the record. See Wis. Stat. Rule 809.19(1)(d) and (e) (requiring a party's briefs to contain "appropriate references to the record," and "citations to the ... parts of the record relied on"). To the extent we do not address an argument Rosneck intended to raise, it is deemed rejected as insufficiently developed. See State v. Pettit , 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (it is not this court's duty to develop legal arguments on behalf of the appellant; accordingly, we may choose not to consider arguments unsupported by references to legal authority, arguments that do not reflect any legal reasoning, and arguments that lack proper citations to the record).